UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SATNAM SINGH,

           Petitioner,

    v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY,

           Respondent.

No. 1:26-cv-00436 DAD SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee representing himself in this habeas corpus action filed pursuant to 28 U.S.C. § 2241. This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I.    Factual and Procedural History

### A.  Petitioner's Allegations

According to § 2241 petition's allegations, petitioner is an Indian national and arrived in the United States on October 30, 2023. ECF No. 1 at 6. ICE released petitioner based on its determination that he was not a flight risk or a danger to the community. Id. at 7. Petitioner states that he has committed no crimes and complied with ICE's instructions to upload his photo into the Bi Smart Link application. Id. at 6-7. Petitioner has proceedings for asylum, withholding of removal, and Convention Against Torture. Id. at 5.

When petitioner went to the San Francisco ICE office for an address change on June 30,

1

2025, ICE agents put an ankle monitor on him.  Then on July 20, 2025, ICE agents arrested petitioner at his home.  Two days after his arrest, he was transferred to the Golden State Annex Immigration Detention Facility, within this judicial district.  Id.  Petitioner alleges that he has not received a bond hearing before a neutral decisionmaker to determine whether his prolonged detention is justified based on danger or flight risk, and that the immigration court insists it lacks jurisdiction to do so.  Id. at 5.

Petitioner further alleges that he is subjected to inadequate medical care, verbal abuse from officers, unsanitary bathrooms, expired food, and solitary confinement.  ECF No. 1 at 5.  He is crowded into a single dorm with 80 other detainees.  Id.  Petitioner belongs to the Sikh religion and has been denied vegetarian food.  Id. at 6.  Moreover, the restrooms lack cleaning equipment and there is no clean or safe place to wash his Turban.  Before his arrest, petitioner's final hearing was scheduled for 2027.  Id. at 7.  Now ICE is trying to send him to Uganda and his final hearing was advanced to February 26, 2026.  Id.

Petitioner alleges that his detention violates the Due Process Clause of the Fifth Amendment.  ECF No. 1 at 17.  The petition frames this claim as one for procedural due process and applies the balancing test from Mathews v. Eldridge, 424 U.S. 319 (1976) ("Mathews").  Id. at 11.  Petitioner requests an order granting his immediate release with appropriate conditions of supervision.  Id. at 7, 17-18.

### B.  Respondents' Answer/Return

On January 23, 2026, the undersigned issued an order directing respondent to file an answer/return.  ECF No. 9.  The order specified that, "[i]f an answer/return is filed, respondent shall include with the answer/return any and all transcripts or other documents relevant to the determination of the issues presented in the application."  Id. at 2.

Respondent, however, did not submit any transcripts or other documents.  Respondent argues only that petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and cites to the minority of cases supporting this interpretation, including the Board of Immigration Appeals' decision in In re Matter of Yajure Hurtado, 29 I & N Dec. 216 (BIA 2025).  ECF No. 10 at 1-2.  Respondent further asserts that petitioner's prior

release in the discretion of DHS does not have the effect of having converted his presence in the United States into an "admission," and that petitioner has no protected liberty interest. Id. at 2.

## II. Legal Standards

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews applies. See Rodriguez Diaz, 53 F.4th at 1206-07. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

## III. Analysis

### A. Petitioner Has a Protected Liberty Interest

Respondent's argument that the petitioner lacks a protected liberty interest is unavailing. As District Judge Drozd recently explained in a factually similar case, a noncitizen like petitioner, who DHS previously released at its discretion, has a liberty interest in his continued release and is entitled to certain due process protections:

> [E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." Calderon v. Kaiser, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting Morrissey v.

3

Brewer, 408 U.S. 471, 482 (1971)); see also Valencia Zapata v. Kaiser, — F. Supp. 3d —, No. 25-cv-07492-RFL, 2025 WL 2741654, at *6 (N.D. Cal. Sept. 26, 2025). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody[ ]" where an immigration official "elected to release" a petitioner on their own recognizance. Salcedo Aceros v. Kaiser, No. 25-cv-06924-EMC, 2025 WL 2637503, at *6–7 (N.D. Cal. Sept. 12, 2025); see also Polo v. Chestnut, No. 1:25-cv-01342-JLT-HBK, 2025 WL 2959346 (E.D. Cal. Oct. 17, 2025) (collecting cases holding that an individual released from immigration detention has a protected liberty interest in continued release).

In this case, as in many others to have recently come before this court, petitioner acquired a liberty interest in his continued freedom when DHS elected to release him[.] See Cordero Pelico v. Kaiser, No. 25-cv-07286-EMC, 2025 WL 2822876, at *7 (N.D. Cal. Oct. 3, 2025) (finding that the petitioners' release "implied a promise that they would not be re-detained so long as they abided by the terms of their release"); F.M.V. v. Wofford, No. 1:25-cv-01381-KES-SAB (HC), 2025 WL 3083934, at *4 (E.D. Cal. Nov. 4, 2025) ("[R]eliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally protected interest."); Valencia Zapata, 2025 WL 2741654 at *6 ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").

Cajina v. Wofford, No. 1:25-cv-1566 DAD AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025). The undersigned further agrees with Judge Drozd that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme." Id. (citations omitted).

### B. **Mathews** Factors

Having found that the petitioner has a protected liberty interest, the only question remaining is what procedures are necessary to protect that liberty interest. As respondent did not engage with the Mathews balancing test, the undersigned will apply its factors to petitioner's uncontested allegations.

The first factor unquestionably tilts in petitioner's favor. An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Petitioner's detention, which began on July 20, 2025, has now passed the six-month presumptive period set forth in Zadvydas, beyond which continued detention becomes prolonged. See Zadvydas, 533 U.S. at 701. Moreover, petitioner has credibly alleged his detention burdens the exercise of his Sikh faith. "Civil detainees retain the protections afforded by the First Amendment, including the right to freely practice their religion." Rhoden v.

4

Dep't of State Hosps., No. 1:18-cv-0101 NONE SAB PC, 2020 WL 5737019, at *15 (E.D. Cal. Mar. 20, 2020) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)), report and recommendation adopted, No. 1:18-cv-0101 DAD SAB PC, 2020 WL 4048489 (E.D. Cal. July 20, 2020).  All of these circumstances combine to tip the first Mathews factor strongly in petitioner's favor.

Second, the risk of erroneous deprivation also weights in petitioner's favor.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high.  R.D.T.M. v. Wofford, No. 1:25-cv-1141 KES SKO (HC); 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); A.E. v. Andrews, No. 1:25-cv-0107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (stating that "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing.").  Petitioner has been detained for nearly seven months without receiving a bond hearing to evaluate his dangerousness and/or flight risk.  Respondent does not dispute that petitioner complied with the terms of his supervision and that he has no criminal or other violations.  Under these circumstances, a pre-deprivation hearing before a neutral decisionmaker would have significant value in determining whether petitioner's detention is necessary.  Thus, the second Mathews factor favors petitioner.

With the final factor, courts weigh the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail."  Mathews, 424 U.S. at 335.  This factor also favors petitioner, as "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  Further, the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-cv-1884 TLN SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Cajina, 2025 WL 3251083, at *5 ("In immigration court, custody hearings are routine and impose a minimal cost." (quoting Salcedo Aceros v. Kaiser, No. 25-cv-6924 EMC, 2025 WL 2637503, at *6–7 (N.D. Cal. Sept. 12, 2025)).  For all

5

these reasons, the undersigned finds that petitioner is entitled to relief under the <u>Mathews</u> factors.

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted.

2.      Petitioner be ordered to be released immediately from the respondent's custody with the same conditions that he was subject to prior to his re-detention on July 20, 2025.

3.      At the time of release, respondent be required to return all of petitioner's documents and possessions.

4.      If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which petitioner's eligibility for ongoing release must be considered.

5.      Respondent be further directed to file a notice certifying compliance with the above provisions within three days from the date of any adoption of these Findings and Recommendations by the District Judge assigned to this matter.

6.      Petitioner's motion for appointment of counsel (ECF No. 3) be denied as moot.

7.      The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See <u>United States v. Barney</u>, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); <u>see</u> <u>also</u> Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

////

DATED: February 5, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE